United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

JOSEPH CORNETT,

    Petitioner,

 vs.

DOMINGO URIBE, Warden,

    Respondent.

_____/

No. C 11-04262 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY**

   This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why the writ should not be granted.  Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court.  Petitioner responded with a traverse.  For the reasons set out below, the petition is denied.

**BACKGROUND**

   On July 20, 2007, a jury convicted petitioner of assault with a semiautomatic firearm, *see* Cal. Penal Code § 245(b), attempted murder, *see* Cal. Penal Code §§ 187, 664, and shooting from a motor vehicle, *see* Cal. Penal Code § 12034(c).  Respondent's Exhibit ("Resp. Exh.") A at 263-67.  The jury also found true various allegations that petitioner both personally used and intentionally discharged a firearm, and that he personally inflicted great bodily injury, *see* Cal. Penal Code §§ 12022.5(a), 12022.53(b), (c), and (d), and 12022.7(a).  *Id.*  On September 21, 2007, the court sentenced petitioner to a total term of 32 years to life in prison, consisting of the seven-year midterm for attempted murder, enhanced by 25 years to life for personal use of a firearm causing great bodily injury.  *Id.*

1   All of the other counts and enhancements were stayed.  *Id.*  On July 6, 2009, the California

2   Court of Appeal affirmed the judgment.  Resp. Exh. C2, *People v. Cornett*, 2009 WL

3   1919190 (Cal. App. 1 Dist.).  A petition for review was summarily denied by the California

4   Supreme Court on September 17, 2009.  Resp. Exh. D1, D2.  A petition for writ of habeas

5   corpus was summarily denied by the California Supreme Court on July 20, 2011.  Resp.

6   Exh. E1, E2.

7        The facts, as described by the California Court of Appeal, are as follows:

8        The victim, Anthony Murphy, who was 17 years old at the time of the
offense, testified that in the early morning hours of October 22, 2006, he
9        and a large group of friends were walking northbound on Broadway after
coming from a club in Jack London Square in Oakland, California.  Murphy
10     noticed a burgundy Buick with several males in it also heading northbound
on Broadway.  Several of Murphy's friends responded, "seventy-eight
11     hundred," "ten six," and "rolling hundreds" which signified the
neighborhoods in Oakland where they were from.  Murphy heard someone
12     from inside the car say, "I wet your T-shirt up, little nigger."  He interpreted
that to mean, "I'll shoot you."
13

      The Buick then drove down the block and made a U-turn and came back
14     around very slowly.  At this point Murphy and his friends were underneath
the overpass at 6th and Broadway still walking northbound.  Murphy bent
15     down to tie his shoe and pull up his pants in case he had to run, when he
heard a shot coming from the front of the car.  When he was running
16     away, Murphy discovered that he had suffered a bullet wound in his upper
left thigh.  His friends summoned the police, who were in the area.
17

      Police dispatchers broadcast information regarding the incident to other
18     officers in the area.  A car matching the description of the vehicle involved
in the shooting was spotted and pulled over by police within a couple of
19     minutes of the broadcast.  After all five of the car's occupants were
ordered out of the vehicle and handcuffed, officers searched the vehicle.
20     Officers found a loaded nine-millimeter semiautomatic firearm lying on the
right rear floorboard partially under the front seat and a single expended
21     cartridge from a bullet casing on the right rear passenger seat.
Subsequently, an extra magazine and a box of ammunition were found in
22     the car.

23      The vehicle was registered to appellant, and appellant was identified as
the driver.  Three of Murphy's friends who were with him when he was
24     shot testified that the driver of the car was the person with the gun.  A
gunshot residue test was conducted on appellant.  Nine particles of
25     gunshot residue were found on appellant's right hand.  However, the
criminalist who testified conceded that this did not conclusively show that
26     appellant had fired the gun, as the same results could be achieved if a
person handled a gun that had just been fired or was "in very close
27     proximity to a gun going off...."

28      Demaurie Williams, who described himself as a good friend of appellant's,

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

was in appellant's car on the night Murphy was shot. He testified at trial that his head was down when the shot was fired, and he had no idea who fired the gun. However, Williams admitted that shortly after his arrest, he gave a tape recorded statement to the police in which he identified appellant as the shooter. In his statement to police, Williams recalled that after the shooting, appellant handed the gun to one of the rear passengers and said "put it under the seat." At trial, Williams's tape-recorded statement was played for the jury. Williams recanted his identification of appellant as the shooter, claiming it was the product of police coercion and trickery.

When he was shot, Murphy was a senior at Castlemont High School and was student body president and captain of both the baseball and football teams. He was shot in the middle of the football season. Because of his injuries, he missed several important games where recruiters from Division I college teams were in attendance, which Murphy believed cost him a college scholarship. Murphy's treating physician testified that in his opinion, Murphy had an "excellent" prognosis and was expected to make a full recovery. However, at the time of trial, Murphy testified that he was still suffering mobility problems which impeded his athletic performance.

The defense rested without presenting any witnesses. In closing argument, defense counsel highlighted specific inconsistencies in the statements given by the eyewitnesses, which he claimed rendered the identification of appellant as the shooter not credible. He claimed that because of the law of physics and the trajectory of the bullet, the shot which struck Murphy had to have been fired by someone sitting in the back seat of the vehicle.

Resp. Exh. C2 at 2-4 (footnotes omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the

United States District Court

For the Northern District of California

1   first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

2   reached by [the Supreme] Court on a question of law or if the state court decides a case

3   differently than [the Supreme] Court has on a set of materially indistinguishable facts."

4   *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application

5   of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

6   identifies the governing legal principle from the Supreme Court's decisions but

7   "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The

8   federal court on habeas review may not issue the writ "simply because that court concludes

9   in its independent judgment that the relevant state-court decision applied clearly

10  established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must

11  be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

12      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

13  determination will not be overturned on factual grounds unless objectively unreasonable in

14  light of the evidence presented in the state-court proceeding."  *See Miller-El*, 537 U.S. at

15  340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

16      When there is no reasoned opinion from the highest state court to consider the

17  petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*,

18  501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.

19  2000).  Thus, a federal court will "look through" the unexplained orders of the state courts

20  rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state

21  court unreasonably applied Supreme Court precedent.  *See Ylst,* 501 U.S. at 804-06.

22  However, when presented with a state court decision that is unaccompanied by a rationale

23  for its conclusions, a federal court must conduct an independent review of the record to

24  determine whether the state-court decision is objectively unreasonable.  *See Delgado v.*

25  *Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  This review is not a "de novo review of the

26  constitutional issue;" rather, it is the only way a federal court can determine whether a

27  state-court decision is objectively unreasonable where the state court is silent.  *See Himes*

28  *v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "[W]here a state court's decision is

United States District Court

For the Northern District of California

1 unaccompanied by an explanation, the habeas petitioner's burden still must be met by

2 showing there was no reasonable basis for the state court to deny relief." *See Harrington v.*

3 *Richter*, 131 S. Ct. 770, 784 (2011).

**DISCUSSION**

5       As grounds for federal habeas relief, petitioner asserts that: (1) the trial court

6 violated his due process rights by its (apparently inadvertent) failure to instruct the jury that

7 he had a right not to testify; (2) the error in failing to give the instruction was not harmless;

8 (3) the evidence was insufficient to support his conviction for attempted murder;

9 (4) the sentence constituted cruel and unusual punishment in violation of the Eighth

10 Amendment; (5) the California Court of Appeal violated his rights by citing case law "on its

11 own" after the state had failed to file a responsive brief; (6) the trial court committed judicial

12 misconduct and violated his Sixth and Fourteenth Amendment rights by writing to the

13 former jurors on petitioner's case, asking them if they had discussed petitioner's failure to

14 testify, telling them that petitioner's appellate counsel wished to discuss the issue with

15 them, and informing them that under California law they were not required to speak with

16 her; (7) appellate counsel was ineffective by filing her opening brief before attempting to

17 gain the release of juror information at the trial court level; (8) the prosecution failed to

18 disclose exculpatory information from the dispatch tapes; (9) the prosecution failed to

19 disclose exculpatory information from a police video camera; (10) appellate counsel was

20 ineffective for failing to investigate inside of the police vehicle; (11) appellate counsel was

21 ineffective for failing to argue that trial counsel was ineffective for failing to conduct an

22 independent ballistic test; and (12) appellate counsel was ineffective for failing to contend

23 that trial counsel was ineffective for not requesting a lineup.  Petition for Writ of Habeas

24 Corpus ("Hab. Pet.") at 6, claims one through twelve.  The court previously determined that

25 claim number two did not state a separate ground for relief, and dismissed claim number

26 five as frivolous.  The remaining claims will be addressed on the merits.

27 **I.     Failure to Instruct the Jury on Petitioner's Right Not to Testify**

28        In his first and second claims, petitioner contends that the trial court committed

5

1   reversible error by failing to instruct the jury pursuant to CALJIC Nos. 2.60 and 2.61 as

2   requested, and that the error, even if subject to harmless error analysis, was not harmless.

3   Hab. Pet. at 6, claims one and two.

### A. Factual Background

5   Petitioner did not testify at trial, and the record reflects that trial counsel requested

6   that the jury be instructed on the defendant's right not to testify pursuant to CALJIC 2.60

7   and 2.61.  Resp. Exh. A at 158.  The court agreed to give the instructions, Resp. Exh. B4 at

8   757, but inadvertently failed to do so, and neither side called the omission to the court's

9   attention.

10   On direct appeal, petitioner argued that the trial court's failure to give the requested

11   instructions could never be considered harmless and required reversal per se.  Resp. Exh.

12   C2 at 5.  The Court of Appeal disagreed, finding that, under California law, the trial court's

13   inadvertent failure to give the requested instructions was subject to harmless error analysis.

14   *Id.* at 6.  Applying the harmless error standard set forth in *Chapman v. California*, 386 U.S.

15   18, 24 (1967), the Court of Appeal determined that, based on the evidence adduced at trial,

16   the trial court's failure to instruct the jury was harmless beyond a reasonable doubt.  *Id.* at

17   7.

### B. Legal Standard

19   A trial judge, upon the defendant's request, has a constitutional obligation to instruct

20   the jury not to draw an adverse inference from the defendant's failure to testify.  *See Carter*

21   *v. Kentucky*, 450 U.S. 288, 305 (1981).

22   The trial court's failure to give a *Carter* instruction is a trial error subject to harmless

23   error analysis, and is not a structural error because it does not affect the framework within

24   which the trial proceeds.  *See United States v. Soto*, 519 F.3d 927, 930-31 (9th Cir. 2008).

25   "[B]efore a federal constitutional error can be held harmless, the court must be able

26   to declare a belief that it was harmless beyond a reasonable doubt."  *See Chapman,* 386

27   U.S. at 24.  However, a  federal court reviewing a state-court determination in a habeas

28   corpus proceeding should apply the less onerous standard for harmless error set forth in

**United States District Court**
For the Northern District of California

*Kotteakos v. United States*, 328 U.S. 750, 776 (1946), which requires a court to determine whether the error "had substantial and injurious effect or influence in determining the jury's verdict."   *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  An instructional error is prejudicial under *Brecht* if, after reviewing the record as a whole, the court concludes that there was a substantial and injurious effect or influence on the verdict, or if the court is left in grave doubt as to whether there was such an effect.  *See Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010).  Grave doubt exists in the "unusual" circumstance where, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."  *See O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).  The Supreme Court has confirmed that the *Brecht* standard applies on habeas review of trial errors, even if the state court was required to apply the stricter, *Chapman* standard of "harmless error" on direct review.  *See California v. Roy*, 519 U.S. 2, 5 (1996).

**C. Discussion**

Under the law of this Circuit, the trial court's failure to instruct the jury on the defendant's right not to testify is subject to harmless error analysis.  *See Soto*, 519 F.3d at 930.  Even so, petitioner claims that the error cannot be considered harmless because the identity of the shooter remained in doubt. Hab. Pet. at 6.  This contention lacks merit.  The evidence adduced at trial included eyewitness testimony from three men who positively identified the driver of the Buick as the shooter, and when the Buick was pulled over minutes after the shooting, petitioner was the one driving the vehicle.  Resp. Exh. C2 at 6. A loaded semiautomatic weapon, a spent shell casing, and ammunition were found inside the car.  *Id.*  The prosecution's expert testified that the presence of gunshot residue on petitioner's hand was consistent with the theory that he was the shooter.  *Id.*  Additionally, one of the passengers in the Buick at the time of the shooting gave a tape-recorded statement to police shortly after the shooting  identifying petitioner as the shooter.  *Id.* Although the witness later recanted his identification at trial, the jury could reasonably have inferred that his initial statement was truthful and that he recanted his statement out of fear of retaliation.  *Id.*  The overwhelming evidence showed that petitioner was the shooter, and

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

the defense offered no witnesses or evidence to cast doubt on this theory.

In addition to the compelling evidence, there were other instructions given which reduced any prejudice that resulted from the trial court's failure to give the requested instructions.  The jury was instructed that neither side is required to call as witnesses all persons who may have been present or have knowledge of the events, that the People have the burden of proof, that a defendant is presumed innocent until the contrary is proved, and that if there is a reasonable doubt whether guilt has been shown, the defendant is entitled to a verdict of not guilty.  Resp. Exh. A at 216, 226.  Moreover, there was no mention made before the jury by either party concerning petitioner's decision not to take the stand, and at no point during the trial did the prosecutor argue to the jury that they should draw an adverse influence based on that decision.  The instructions given and the absence of any comment to the jury concerning petitioner's decision not to testify, confirm that the harmless error finding was not an unreasonable application of the facts.

Viewing the record in its entirety, the court is not left with grave doubt as to whether a  jury would have found guilt beyond a reasonable doubt had they been instructed on the petitioner's right not to testify.  Accordingly, the trial court's failure to instruct the jury not to draw any adverse inference from petitioner's failure to testify was harmless, because it did not have a substantial or injurious effect on the jury's verdict.  *See Brecht*, 507 U.S. at 637.

**II.    Sufficiency of the Evidence**

Petitioner claims that there was insufficient evidence to support his conviction for attempted murder.  Hab. Pet. at 6, claim three.

**A.  Legal Standard**

In *Jackson v. Virginia*, 443 U.S. 307, 316 (1979), the Supreme Court established the due process standard by which federal courts review a habeas corpus petition challenging the sufficiency of evidence for a state conviction.  Due process requires that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof–defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."  *Id.* at 316.  A state prisoner who alleges

United States District Court
For the Northern District of California

1   that the evidence in support of his state conviction cannot be fairly characterized as

2   sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a

3   federal constitutional claim that, if proven, entitles him to federal habeas relief.  *Id.* at 321,

4   324.

5           A federal court reviewing a state court conviction does not determine whether it is

6   satisfied that the evidence established guilt beyond a reasonable doubt.  *See Payne v.*

7   *Borg*, 982 F.2d 335, 338 (9th Cir. 1993).  The federal court "determines only whether, 'after

8   viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

9   could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.*

10  *quoting Jackson*, 443 U.S. at 319.  A court must apply the *Jackson* standard "with explicit

11  reference to the substantive elements of the criminal offense as defined by state law."  *See*

12  *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004).

13          Under the *Jackson* standard, a conviction may be supported by logical inferences

14  from circumstantial evidence, but the inferences cannot be merely speculative.  *See*

15  *Sarausad v. Porter*, 479 F.3d 671, 677 (9th Cir. 2007), *rev'd on other grounds sub nom.*

16  *Waddington v. Sarausad*, 555 U.S. 179, 182 (2009); *Walters v. Maass*, 45 F.3d 1355, 1358

17  (9th Cir. 1995).  Where behavior is consistent with both guilt and innocence, the burden is

18  on the state to produce evidence that would allow a rational trier of fact to conclude beyond

19  a reasonable doubt that the behavior was consistent with guilt; however, the "prosecution

20  need not affirmatively rule out every hypothesis except that of guilt."  *See Sarausad*, 479

21  F.3d at 678 (citation omitted).

22          After AEDPA, a federal habeas court applies the standards of *Jackson* with an

23  additional layer of deference.  *See Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

24  The Ninth Circuit has held that section 2254(d)(1) of AEDPA applies to federal review of a

25  state court's sufficiency of the evidence determination under *Jackson*.  *Id.* at 1274-75.  If

26  the state court affirms a conviction under *Jackson*, the federal court must decide whether

27  the state court's application of *Jackson* was objectively unreasonable.  *See Sarausad*, 479

28  F.3d at 677-78.  The Ninth Circuit has adopted guidelines for determining whether a state

court applied *Jackson* in an objectively unreasonable manner under section 2254(d)(1), which states as follows:

> (1) The focus of the inquiry is on the state court decision;
>
> (2) Even with the deference due by statute to the state court's determinations, the federal habeas court must look to the "totality of the evidence" in evaluating the state court's decision;
>
> (3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;
>
> (4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and
>
> (5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

*Sarausad*, 479 F. 3d at 678 (citation omitted).

In contrast, section 2254(d)(2) does not apply to *Jackson* cases because the federal court does not decide whether the state court unreasonably determined disputed facts. *Sarausad*, 479 F.3d at 678. Rather, the court must decide whether the state court unreasonably applied the *Jackson* test. *Id.* at 683. Accordingly, a federal court evaluates a challenge to a state conviction on insufficient evidence grounds under section 2254(d)(1) rather than (d)(2). *Id.* at 678.

**B. Discussion**

**i. California law**

The elements of attempted murder are (1) a specific intent to murder a human being and (2) a direct but ineffectual act done toward its commission. *See People v. Koontz*, 162 Cal. App. 3d 491, 495 (1984).

California courts assess the sufficiency of the evidence by reviewing the entire record in the light most favorable to the judgment, and determining whether it contains substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *See People v. Lee*, 51 Cal. 4th 620, 632 (2011) (citations omitted). It is the province of the jury to determine the credibility of a witness and to resolve

United States District Court

For the Northern District of California

1   the truth or falsity of the facts upon which a determination depends, and even conflicts in

2   testimony which arouse suspicion do not justify the reversal of a judgment.  *Id.*   A

3   reviewing court resolves neither credibility issues nor evidentiary conflicts, and simply looks

4   for substantial evidence.  *Id.*

5   ### ii.  California Court of Appeal Opinion

6   On direct appeal, petitioner argued that there was insufficient evidence to show that

7   he had the specific intent to kill the victim, as he fired only a single bullet and did not know

8   with substantial certainty that the victim's death would result.  Resp. Exh. C2 at 7.  The

9   Court of Appeal found that there was substantial evidence to support the jury's

10  determination that petitioner had the specific intent to kill the victim.  *Id.* at 8.  According to

11  numerous witnesses, the shooting was preceded by a verbal taunt that indicated an intent

12  to shoot someone.  *Id.* Petitioner made a U-turn in order to position his vehicle close to the

13  victim, then aimed and fired a semiautomatic handgun, wounding him in the leg.  *Id.* The

14  fact that petitioner fired only one shot that hit the victim in the thigh did not compel the

15  conclusion that he lacked the intent to kill, as he may have abandoned his efforts out of

16  necessity, and failed to kill the victim because his aim was poor.  *Id.* at 9.  In light of the

17  foregoing evidence, the Court of Appeal rejected petitioner's claim that there was

18  insufficient evidence to support the attempted murder conviction.

19  ### iii.  Analysis

20  Petitioner claims that if he intended to kill the victim, the shot would more likely than

21  not have been fatal, and even if he initially had an intent to kill, the fact that he fired only

22  one shot indicates that he changed his mind.  Traverse at 7, 9.  This argument lacks merit.

23  Resp. Exh. C2 at 2-3.  After the initial encounter with the victim and his group, petitioner

24  drove around the block and came back upon them very slowly, flashing a gun.  *Id.* at 2, B4

25  at 624-25, 627-28.  Three eyewitnesses identified petitioner as the person who fired the

26  shot.  Resp. Exh. C2 at 6.  The Buick was stopped within minutes after the shooting, and a

27  loaded gun, loaded magazine, and a box of ammunition were recovered from the vehicle.

28  *Id.*  There could be any number of reasons why petitioner only fired once, but that one

1    gunshot, even though it hit the victim in a non-vital area of the body, was enough for a

2    rational trier of fact to conclude that petitioner had the specific intent to kill the victim.

3                **iv.  Conclusion**

4        Viewing the evidence in the light most favorable to the prosecution, the record

5    supports the conclusion that any rational trier of fact could have found the essential

6    elements of the crime beyond a reasonable doubt.  *See United States v. Herrera-Gonzalez*,

7    263 F.3d 1092, 1095 (2001).  The state court's determination that there was sufficient

8    evidence to support the jury's verdict of attempted murder was not contrary to, or an

9    unreasonable application of, clearly established federal law.  *See* 28 U.S.C.

10    § 2254(d)(1); *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

11    **III.**     **Cruel and Unusual Punishment**

12        Petitioner contends that the imposition of a 25-year to life sentence for the firearm

13    enhancement in section 12022.53(d) constitutes cruel and unusual punishment.  Hab. Pet.

14    at 6, claim four.

15         **A.  Court of Appeal Opinion**

16        The Court of Appeal found that petitioner forfeited this argument by failing to raise it

17    in the trial court.  Resp. Exh. C2 at 9.  Nevertheless, the court addressed the merits and

18    rejected petitioner's claim, finding that California courts have repeatedly held that

19    sentences imposed under section 12022.53(d) do not constitute cruel and unusual

20    punishment as defined under either the state or federal constitutions.  *Id.*

21         **B.  Legal Standard**

22        Outside of the capital punishment context, the Eighth Amendment prohibits only

23    sentences that are extreme and grossly disproportionate to the crime.  *See United States v.*

24    *Bland*, 961 F.2d 123, 129 (9th Cir.1992) *quoting Harmelin v. Michigan*, 501 U.S. 957, 1001

25    (1991).  Such instances are "exceedingly rare" and occur in only "extreme" cases.  *See*

26    *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *Rummel v. Estelle*, 445 U.S. 263, 272

27    (1980).  So long as a sentence does not exceed statutory maximums, it will not be

28    considered cruel and unusual punishment under the Eighth Amendment.  *See United*

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   *States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998).  Further, the Ninth Circuit has

2   determined that a 25-year to life enhancement under section 12022.53(d) is neither

3   extreme nor grossly disproportionate to the offense of murder.  *See Plascencia v.*

4   *Alameida,* 467 F.3d 1190, 1204 (9th Cir. 2006).

5   **C.  Discussion**

6   Petitioner contends that a sentence of twenty-five years to life is grossly

7   disproportionate to the crime that he committed, which amounted to firing a single shot from

8   a 9 mm pistol that struck the victim in the thigh.  Traverse at 10.

9   Although petitioner attempts to minimize his criminal conduct, there is no basis for

10  finding that the enhancement for his use of a firearm causing great bodily injury is grossly

11  disproportionate to the offense of attempted murder.  As noted by the Court of Appeal,

12  petitioner was responsible for turning a chance encounter into a potentially deadly incident.

13  Resp. Exh. C2 at 11.  Instead of driving away after being verbally taunted, he responded in

14  a reckless manner with deadly force, and an unarmed person was shot.  *Id.* The California

15  legislature has determined that a criminal offender who discharges a firearm and causes

16  great bodily injury during the commission of certain enumerated felonies is subject to the

17  enhancement.  Petitioner was sentenced in accordance with the statute, and the sentence

18  did not exceed the statutory maximum.  Petitioner fails to establish that his enhanced

19  sentence was cruel or unusual.

20  Accordingly, the state court's rejection of petitioner's claim was not contrary to, or an

21  unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).

22  **IV.   Judicial Misconduct**

23  Petitioner claims that the trial court committed misconduct by writing a letter to the

24  former jurors explaining a defense request for the release of juror information.  Hab. Pet. at

25  6, claim six.

26  **A.  Factual Background**

27  While on direct appeal, defense counsel filed a motion asking the trial court to

28  release juror information in order to find out whether, during their deliberations, any jurors

United States District Court

For the Northern District of California

1   impermissibly considered the fact that petitioner did not testify at trial.  Resp. Exh. E1 at

2   Petitioner's Exhibit "B".  In response to the motion, the trial court sent a letter to the former

3   jurors explaining their right to discuss or not to discuss the issue with defense counsel, and

4   informing the jurors of their right to oppose the disclosure of their contact information and to

5   make it known that they did not wish to be contacted by anyone.  Resp. Exh. E1 at

6   Petitioner's Exhibit "F".  The court further explained that they should respond to the letter

7   only if they wished to have contact with defense counsel, and provided an address where

8   they could do so.  *Id.*  No juror chose to write to defense counsel.  Resp. Exh. E1 at

9   Petitioner's Exhibit "H".

10       **B.  California Law**

11       In California, personal identifying information of seated trial jurors must be sealed,

12  but any person is allowed to petition the court for access to the information.  California

13  Code of Civil Procedure § 237(a), (b).  If the petitioner can establish a prima facie showing

14  of good cause for the release of the information, the trial court may set the matter for

15  hearing, and must provide notice to the former jurors at their last known address, and any

16  affected juror may protest the granting of the petition.  *Id.* at § 237(b),(c).  The court shall

17  sustain the protest of the former juror if the petitioner fails to show good cause, if there is a

18  compelling interest against disclosure, or if the juror is unwilling to be contacted by the

19  petitioner.  *Id.* at § 237(d).

20       **C.  Discussion**

21       Petitioner contends that the trial court's letter to the jurors informing them that they

22  were not obligated to discuss the issue with defense counsel, amounted to judicial

23  misconduct because the issue arose from the court's own mistake and its letter was

24  designed to avoid the reversal of his conviction.  Hab. Pet. at 6, claim six.  This contention

25  lacks merit.  There is no clearly established Supreme Court authority requiring the trial

26  court to inform jurors that they must speak with defense counsel regarding an issue that

27  has come up on appeal under any circumstances, regardless of whether the issue arose

28  from the court's own mistake.  The trial court complied with the requirements set forth in the

United States District Court
For the Northern District of California

1  California Code of Civil Procedure by sending a letter to the jurors explaining the situation,

2  informing them of their rights, and establishing a procedure whereby interested jurors could

3  respond if they so chose.  Petitioner fails to establish that the court's actions constituted

4  judicial misconduct in violation of his right to due process.  After an independent review of

5  the record, the court concludes that the state court's decision denying petitioner's claim of

6  judicial misconduct was not objectively unreasonable.  *See Delgado*, 223 F.3d at 982.

7  **V.   Prosecutorial Misconduct**

8      Petitioner claims that the prosecution violated its obligation under *Brady v. Maryland*,

9  373 U.S. 83, 87-88 (1963), by failing to disclose exculpatory evidence.  Hab. Pet. at 6,

10  claims eight and nine.

11      **A.  Factual Background**

12      On the evening of October 22, 2006, Officer Bradley Baker responded to a report of

13  the instant shooting that was broadcast over the police radio, indicating that a vehicle

14  involved in the shooting had left the scene.  Resp. Exh. B1 at 185-86.  Guided by the police

15  radio, Officer Baker arrived at the scene where the suspect vehicle had already been

16  stopped by another patrol car, and provided support to the officers conducting the felony

17  car stop.  *Id.* at 187-89.  Officer Baker stated that, when he arrived, all of the occupants

18  were still in the car and were being ordered to come out one at a time with their hands in

19  the air.  *Id.* at 189.  During this process Officer Baker noticed that one of the passengers in

20  the back seat appeared to be hiding something, and ordered him to immediately get his

21  hands in the air, which he did after about 30 seconds.  *Id.* at 190-91.  In the process of

22  clearing the vehicle after all the passengers were removed and handcuffed, Officer Baker

23  discovered a firearm on the right rear floorboard.  *Id.* at 192-93.

24      **B.  Legal Standard**

25      In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the

26  suppression by the prosecution of evidence favorable to an accused upon request violates

27  due process where the evidence is material either to guilt or to punishment, irrespective of

28  the good faith or bad faith of the prosecution."  *Id.* at 87.  The Supreme Court has since

United States District Court
For the Northern District of California

1   made clear that the duty to disclose such evidence applies even when there has been no

2   request by the accused, *see United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the

3   duty encompasses impeachment evidence as well as exculpatory evidence, *see United*

4   *States v. Bagley*, 473 U.S. 667, 676 (1985).

5       There are three components to a Brady violation. *See Benn v. Lambert*, 283 F.3d

6   1040, 1052 (9th Cir.2002). First, the suppressed evidence must be favorable to the

7   accused. *See United States v. Bagley*, 473 U.S. 667, 676 (1985) *citing Brady*, 373 U.S. at

8   87. Second, the evidence must have been suppressed by the government, either willfully

9   or inadvertently. *See United States v. Agurs*, 427 U.S. 97, 110 (1976). Third, the

10  suppressed evidence must be material to the guilt or innocence of the defendant. *See*

11  *Bagley*, 473 U.S. at 676-78. Evidence is deemed prejudicial, or material, only if it

12  undermines confidence in the outcome of the trial. *Id.* at 676. *Brady* has no good faith or

13  inadvertence defense; whether nondisclosure was negligent or by design, it is the

14  responsibility of the prosecutor. *See Gantt v. Roe*, 389 F.3d 908, 912 (9th Cir. 2004).

15  Moreover, the rule encompasses evidence "'known only to police investigators and not to

16  the prosecutor.'" *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) *quoting Kyles v.*

17  *Whitley,* 514 U.S. 419, 438 (1995). In order to comply with *Brady,* therefore, "'the individual

18  prosecutor has a duty to learn of any favorable evidence known to the others acting on the

19  government's behalf in this case, including the police.'" *Id. quoting Kyles*, 514 U.S. at 437.

    **C. Discussion**

20

21      Petitioner claims that the prosecution failed to disclose taped recordings from the

22  police dispatcher and dashboard video camera recordings from the patrol car that stopped

23  petitioner's car, both of which he contends could have been used to impeach the

24  investigating officers' credibility with respect to what occurred during the felony car stop.

25  Hab. Pet. at 6, claims eight and nine. This claim lacks merit. In the first instance, there is

26  no evidence to suggest that such recordings were made or kept. In any event, petitioner's

27  contention that the prosecution suppressed material that could have provided "critical

28  impeachment evidence" is purely speculative, as petitioner does not suggest how

United States District Court

For the Northern District of California

recordings of dispatches or footage from a patrol car could have been used to undermine the officers' credibility. *See United States v. Abonce–Barrera*, 257 F.3d 959, 970 (9th Cir. 2001) (finding that evidence was not material under Brady where the defendant had only "a hunch" that the evidence would be useful). The investigating officers filed police reports concerning the stop, and were subject to cross-examination regarding details contained or omitted in those reports. Even if such tapes did exist, petitioner fails to point out how their production would have created a reasonable probability of a different result. *See Bagley*, 473 U.S. at 682 (evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different). The prosecution cannot disclose what it does not have and, in any case, there was no prejudice to petitioner. After an independent review of the record, the court concludes that the state court's decision denying petitioner's claims of prosecutorial misconduct was not objectively unreasonable. *See Delgado*, 223 F.3d at 982.

**VI.     Ineffective Assistance of Counsel**

In his remaining claims, petitioner asserts that his appellate counsel was ineffective in several different ways. Hab. Pet. at 6, claims seven, ten, eleven, and twelve.

**A. Legal Standard**

In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires him to show deficient performance and prejudice. Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish prejudice, petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. If a petitioner cannot establish that defense counsel's performance was deficient, it is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

United States District Court

For the Northern District of California

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Id.* at 751-52.

Again, because the California Supreme Court summarily denied the petition with no explanation, the court must conduct an independent review of the record to determine whether its decision denying petitioner's claim of ineffective assistance of counsel was objectively unreasonable. *See Delgado*, 223 F.3d at 982.

### B. Opening Brief

Petitioner claims that his appellate counsel was ineffective for filing her opening brief before attempting to gain the release of juror information at the trial court level. Hab. Pet. at 6, claim seven. This claim lacks merit. As discussed in section IV, *supra*, the trial court followed the notice requirements set forth in the California Code of Civil Procedure, and no jurors responded to counsel's request for information. In light of the fact that there were no responses to counsel's request, petitioner suffered no prejudice from appellate counsel's filing the opening brief before moving the court to release juror contact information. *See Strickland*, 466 U.S. at 694.

### C. Failure to Investigate

Petitioner claims that his appellate counsel was ineffective for not raising the issue of trial counsel's ineffectiveness for failing to investigate inside the police vehicle. Hab. Pet. at 6, claim ten. Petitioner's state habeas petition sets forth the basis for this claim, which alleges that counsel was ineffective for failing to investigate whether the police vehicles involved in the stop were equipped with dashboard video cameras containing recordings of

18

the incident that could have been used to impeach the officers' credibility at trial.  Resp. Exh. E1 at 8C.  Again, as discussed in section V, *supra*, petitioner's claim that the prosecution suppressed recordings from dashboard cameras inside of police vehicles, and that the information on those recordings could have been used to impeach the officers' credibility, was purely speculative, and did not violate the prosecution's obligation to disclose exculpatory evidence under *Brady*, 373 U.S. at 87-88.  Because the claims raised by petitioner lack merit, appellate counsel's failure to raise the issues on appeal was neither deficient nor prejudicial under the *Strickland* standard.  *See Rhoades v. Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011).  Accordingly, petitioner did not receive ineffective assistance of counsel on appeal.

### D.  Ballistic Tests

Petitioner claims that his appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to conduct an independent ballistics test.  Hab. Pet. at 6, claim eleven.

### i.  Factual Background

Criminalist Robert Hinckley testified for the prosecution as an expert on gunshot residue.  Resp. Exh. B4 at 701-43.  Hinckley's analysis of petitioner's gunshot residue collection kit revealed particles of gunshot residue on both his right and left hands, but was not conclusive as to whether he fired the gun.  *Id.* at 714-16.  Hinckley testified that the fact that petitioner had gunshot residue on his hands made it likely that he fired a gun, but it was also possible that he was merely in close proximity to a gun going off, or that he picked up a gun after it had been fired.  *Id.* at 716.  Hinckley further testified that, in a situation where one person fires a gun from a vehicle and the gun remained in the vehicle after touching several individuals, it was possible that each individual could have some gunshot residue on them.  *Id.* at 724.  Hinckley occasionally received requests from the defense to test for gunshot residue.  *Id.* at 726.  Defense counsel then asked Hinckley whether he would change his mind regarding his analysis of petitioner's kit, if a test of a different individual's kit revealed a significantly higher number of gunshot particles.  *Id.* at 727.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hinckley stated that it would not, because he did not have an opinion as to whether petitioner fired the gun, he merely made the determination that he had residue on his hands. *Id.* Hinckley made it clear that having more or less residue on one's hand was not necessarily indicative of having fired, or not fired, a weapon. *Id.* The only conclusion that he drew from his analysis in this case was that petitioner had gunshot residue on his hands that was unique to a weapon being fired. *Id.* at 728. However, he could not definitively state where that residue came from. *Id.* at 728.

### ii. Discussion

Petitioner contends that trial counsel was deficient for failing to conduct an independent ballistics investigation, and that his appellate counsel's failure to raise this issue on appeal also constituted ineffective assistance of counsel. Hab. Pet. at 6, claim eleven. Petitioner fails to state what he hoped to gain by having an independent ballistics investigation. Trial counsel, through his cross-examination of Hinckley, was able to establish that his analysis did not necessarily indicate that it was petitioner who fired the gun. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *See Strickland*, 466 U.S. at 690-91. Rather than obtaining an independent analysis of the gunshot residue, counsel made a strategic choice to rely on the testimony of the prosecution's own witness, Hinckley, and argue that the jury should infer that any one of the individuals in the vehicle could have fired the gun. Counsel's strategic decision not to request further ballistics testing was reasonable as there is no indication that an additional test would have helped his defense and, in fact, could have harmed his defense. Defense counsel is empowered to make such strategic decisions, so long as they are reasonable and informed. *See Jennings v. Woodford*, 290 F.3d 1006, 1014 (9th Cir. 2002). Counsel's performance in this regard was not deficient.

Even assuming that counsel's performance was deficient for failing to request an independent ballistics test, petitioner's claim fails for lack of prejudice because he cannot demonstrate a reasonable probability that the result of the proceeding would have been

different had he requested further testing. *See Strickland*, 466 U.S. at 694. Petitioner's speculative argument that such a test would have raised reasonable doubt in the jury's mind about whether he fired the weapon, is insufficient to establish prejudice. *See e.g. Gonzalez v. Knowles*, 515 F.3d 1006, 1015-16 (9th Cir. 2008) (speculation about what the evidence might have shown had certain tests been done and a specific outcome achieved is insufficient to establish prejudice).

### E. Failure to Request a Lineup

Petitioner's final claim is that his appellate counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for not requesting a pretrial lineup. Hab. Pet. at 6, claim twelve. Specifically, petitioner contends that, as part of his trial preparation, trial counsel should have required the victim to identify him from a live or photographic lineup. *Id.* The victim's inability to identify petitioner would have made it clear to the jury that the victim did not see who shot him. *Id.*

This contention lacks merit. Petitioner was identified as the shooter by three eyewitnesses to the crime, rendering the victim's ability to identify petitioner through a lineup immaterial. Resp. Exh. C2 at 6. In any case, the record reflects that the victim could not confirm who fired the gun and could not identify the occupants of the vehicle because he stopped to tie his shoe and pull his pants up when he heard the gunshot, and did not realize that he had been shot until he started to run. Resp. Exh. B1 at 89-90, 93-94, 98-99, 168-172. During his closing argument, trial counsel emphasized the fact that the victim could not have seen who it was that shot him. Resp. Exh. B4 at 808-11. Based on the foregoing, it is clear that the victim could not reliably identify petitioner as the shooter, thereby removing the need to confirm this fact through a lineup. Counsel's decision not to request a lineup was entirely reasonable and did not constitute deficient performance.

Because trial counsel's performance was not deficient, it stands to reason that appellate counsel was not ineffective for failing to raise the issue on direct appeal. *See Moormann v. Ryan*, 628 F.3d 1102, 1109-10 (9th Cir. 2010) *quoting Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute

United States District Court
For the Northern District of California

ineffective assistance.").

### F. Conclusion

After an independent review of the record, the court confirms that the state court's decisions denying petitioner's claims of ineffective assistance of appellate counsel were not objectively unreasonable. *See Delgado,* 223 F.3d at 982.

## VII. Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds that one issue presented by petitioner in his petition meets the above standard and accordingly GRANTS the COA as to that issue. *See generally Miller-El*, 537 U.S. at 322.
The issue is:

(1) whether the trial court violated petitioner's due process rights by failing to instruct the jury that he had a right not to testify, and/or whether the failure to give the instruction is harmless error.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A Certificate of Appealability is **GRANTED**.  *See* Rule11(a) of the Rules Governing

Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: May 7, 2013.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.11\CORNETT4262.HC.wpd